UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
SAMIRA LEWIS,

                Plaintiff,

   -against-

TURNING POINT BROOKLYN, INC.,
NICHOLAS PEREZ, JUANITA
BELMAR, PAM GULIGI, and
MICHAEL EDWARDS,

                Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 17-cv-7560 (FB)(RLM)

*Appearances:*
*For the Plaintiff*:
LAURIE E. MORRISON, ESQ.
30 Broad Street, 35th Floor
New York, NY 10004

*For the Defendants*:
HOUSTON A. STOKES, ESQ.
BARBARA A. GROSS, ESQ.
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022

**BLOCK, Senior District Judge:**

      Plaintiff Samira Lewis brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. (NYCHRL"), against her former employer, Turning Point Brooklyn, Inc. ("Turning Point"), and against four Turning Point

1

employees: Nicholas Perez, Juanita Belmar, Pam Guligi, and Michael Edwards. The defendants move to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motion is granted in part and denied in part.

I. Background

For purposes of this motion, the Court must take as true all the allegations in Ms. Lewis's Complaint and must draw all inferences in her favor. *See Weixel v. Board of Educ.*, 287 F. 3d 138, 145 (2d Cir. 2002). The following facts are presented accordingly.

Ms. Lewis began working as an administrative assistant and billing coordinator at Turning Point in April 2016. Shortly thereafter, she became romantically involved with Mr. Perez, a supervisor in Turning Point's maintenance department. In June or July of 2016, Mr. Perez started physically and verbally abusing Ms. Lewis. On several occasions, he grabbed her during work lunch hours. He would tell her that she could not wear certain clothing to work because he did not want her to receive attention from male coworkers. He also told her that she was not allowed to speak to male coworkers or with male clients, which was required for her job. At a company beach day in August 2016, he became angry at her for sitting with another coworker. After moving away from their coworkers, he grabbed her and slammed her against a wall.

In late July or early August of 2016, Ms. Lewis ended her relationship with Mr. Perez. Shortly thereafter, he came to her home, asking for another chance. When she refused, he smacked her in the face. Two weeks later he sent her flowers at work. He stopped abusing her, and the couple reconciled and moved in together. In November 2016, Mr. Perez began abusing Ms. Lewis again. He would beat her and yell at her. He would tell her that "'[i]f anything happen[ed] [he] would always be at Turning Point" but [she] would be fired.'" Compl. at 6. On several occasions, he stood near the reception area at Turning Point, staring at Ms. Lewis and making sure that she did not speak with male coworkers or clients.

In December 2016, Ms. Lewis learned that she was pregnant with Mr. Perez's baby. On January 3, 2017, Mr. Perez told Ms. Lewis that his ex-wife had threatened to come to Turning Point and beat up Ms. Lewis. Ms. Lewis asked him to resolve the situation. Instead, Mr. Perez told Ms. Lewis later that day that he was reconciling with his ex-wife and that Ms. Lewis had until the end of the day to move out of the home they shared. When she said that would not be possible, Mr. Perez grabbed her arm and slammed her against the wall of the basement at Turning Point. She protested, pushed him away, and ran upstairs, crying. She told Ms. Guligi, one of her supervisors, that she needed to go home for the rest of the day. Ms. Guligi permitted her to do so.

When Mr. Perez returned home that day, he continued physically abusing Ms. Lewis. Her injuries from the abuse interfered with her ability to walk, bend over, and sleep. She was unable to work on January 4, 2017. Instead, she went to the police and filed a report about Mr. Perez. He was served with a notice of protection on January 5, 2017. That day, Ms. Lewis returned to work. He contacted her and, noting that she was the mother of his child, convinced her to speak with him at a restaurant. There, Mr. Perez continued physically abusing her, and she filed another police report.

The next day, Friday, January 6, 2017, Ms. Lewis went to Turning Point's human resources ("HR") department. She told Ms. Belmar, one of Turning Point's HR managers, that she and Mr. Perez had been in a relationship. She told Ms. Belmar that Mr. Perez was making it very difficult for her to come to work and that Mr. Perez hit her. The bruises and swelling on Ms. Lewis's face were still visible. Ms. Belmar told Ms. Lewis that she could file an official report with Turning Point about Mr. Perez. Ms. Lewis said she would if the situation escalated further.

That day, Mr. Perez served a retaliatory order of protection on Ms. Lewis. It claimed that Ms. Lewis hit and yelled at Mr. Perez on January 3, 2017. After that order of protection, Mr. Perez tried on at least three occasions to contact and see Ms. Lewis, violating both individuals' orders of protection. Turning Point employees knew about Ms. Lewis's orders of protection against Mr. Perez and her injuries.

On Monday, January 9, 2017, Ms. Belmar told Ms. Lewis that Turning Point knew about Mr. Perez's order of protection against Ms. Lewis. On January 10, 2017, Ms. Guligi and Ms. Belmar informed Ms. Lewis that she was being terminated. After, Ms. Belmar told Ms. Lewis that she knew about Mr. Perez's abusing her in the Turning Point basement. A week later, a former coworker of Ms. Lewis's told her that he had heard from Mr. Edwards, Turning Point's maintenance director and Mr. Perez's boss, that the couple had had an argument in Turning Point's basement. The coworker also said that Mr. Edwards made sure that Ms. Lewis was fired and that Mr. Perez was not fired.

On January 11, 2017, Ms. Lewis contacted Ms. Belmar and another Turning Point employee[1] and asked for her job back, telling them that Mr. Perez abused her, that she had filed an order of protection against him, and that Mr. Perez's order of protection had been in retaliation. Ms. Belmar and Mr. Edwards already knew this information. Ms. Lewis received no response. Ms. Lewis's attorney wrote Turning Point a letter on January 24, 2017, detailing the harassment, discrimination, retaliation, and domestic violence that she had endured. Mr. Perez was arrested in

---

[1] The Complaint states that she contacted a "Defendant Rogers." Compl. at 11. The Complaint makes no other mention of a Defendant Rogers and does not explain who he or she is. It may refer to Mr. Edwards, since the Complaint mentions that that Ms. Belmar and Mr. Edwards already knew about Mr. Perez's abuse.

late January or early February 2017 for threatening to kill Ms. Lewis and their baby. As of February 2017, Mr. Perez was still working at Turning Point.

On February 4, 2017, Ms. Lewis filed charged of discrimination, harassment, and retaliation against Turning Point with the Equal Employment Opportunity Commission as well as the New York Human Rights Division. On September 29, 2017, she received a Right to Sue letter. She timely filed suit in this Court.

## II. Discussion

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### A. Disability Discrimination Claims—Counts I, V, and XI

Ms. Lewis claims that she was discriminated against on the basis of a disability in violation of the ADA, the NYSHRL, and the NYCHRL. Because disability discrimination claims under the NYSHRL and the NYCHRL operate

similarly to sex discrimination claims under the ADA[2], the Court proceeds by examining whether Ms. Lewis has stated a claim under the ADA. *Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1048 (2d Cir.1992); *Brower v. Cont'l Airlines, Inc.*, 62 F. Supp. 2d 896, 903 (E.D.N.Y. 1999).

The ADA prohibits employers from discriminating against employees with disabilities on the basis of those disabilities. 42 U.S.C. § 12112(a). An employee claiming that his or her employer violated the ADA must establish that:

> (1) the defendant is covered by the ADA;
> (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA;
> (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and
> (4) plaintiff suffered an adverse employment action because of his [or her] disability or perceived disability.

*Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). Under the ADA, "disability" means that an individual: (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) has "a

---

[2] In fact, the state and city laws more broadly cover disability discrimination than the ADA does. *See Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 182 (E.D.N.Y. 2011) ("[U]nlike the ADA, the NYSHRL does not impose the requirement that the impairment substantially limit the individual's normal activities." (internal quotation marks omitted)). The Court need not address whether Ms. Lewis has stated a claim under the NYSHRL or the NYCHRL because, by concluding that she has stated a claim under the ADA, it necessarily also concludes that she has stated a claim under the state and local laws.

record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Federal regulations clarify that major life activities include "performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)(1)(i). The regulations also state that the term "'substantially limits' is not meant to be a demanding standard" and "shall be construed broadly." *Id.* § 1630.2(j)(1)(i). Further, the requirement of a substantial limitation does not apply to the "regarded as" prong of the "disability" definition under the ADA. *Id.* § 1630.2(j)(2).

Whether an impairment is substantially limiting is a fact-specific and individualized inquiry. *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998). The Second Circuit has not decided whether temporary injuries are per se insufficient to be substantially limiting disabilities under the ADA. *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 317 (2d Cir. 1999). It has held, however, that a temporary impairment of three and one-half months was insufficient to constitute a substantially limiting impairment because the plaintiff had "proffered no evidence showing that, despite the temporary nature of his injury, he was substantially limited in major life activities as a result of that injury." *Id.* at 316. Further, guidance to the ADA explains that "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are

8

typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. § Pt. 1630, App.

Here, Ms. Lewis has alleged facts sufficient to defeat a motion to dismiss on her ADA claims. While it is highly doubtful, given the very short duration of her absences from work, that Ms. Lewis had a disability within the meaning of the ADA, the Court declines to decide prematurely such a fact-specific inquiry at the motion to dismiss phase. *See, e.g.*, *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. CV–10–0010, 2010 WL 3958430, at *9 (E.D.N.Y. Oct. 6, 2010) (denying motion to dismiss despite court's doubt that plaintiff's impairments amounted to a disability). If Ms. Lewis can proffer evidence establishing that her injuries were exceedingly severe, it is theoretically possible that the temporary nature of her injuries did not prevent them from being substantially limiting under the ADA. Further, Ms. Lewis need not even establish that she had a substantially limiting impairment if she can produce evidence proving that the defendants regarded her as disabled.

As to causation, Ms. Lewis has pleaded that at least some of the defendants were aware of her injuries and Mr. Perez's abuse and that Ms. Belmar saw the physical evidence of her injuries. They were also aware that she missed work after Mr. Perez's attacks. At this phase of the litigation, that information—coupled with the temporal proximity of her termination—is enough for these claims to go

9

forward. Accordingly, the Court denies the defendant's motion to dismiss with respect to Counts I, V, and XI.

## B. Disability Retaliation Claims—Counts II, VI, and XII

Ms. Lewis also claims that the defendants retaliated against her for engaging in protected activity under the ADA, the NYSHRL, and the NYCHRL. Because Ms. Lewis has alleged no facts showing that she engaged in any acts protected under those laws, the Court dismisses those counts of the Complaint.

Under the ADA, 42 U.S.C. § 12203(a), the NYSHRL, N.Y. Exec. Law § 296(7), and the NYCHRL, N.Y.C. Admin. Code § 8-107(7), an employee may bring a claim against an employer who has retaliated against the employee for complaining about—or otherwise engaging in protected activity regarding—disability discrimination that he or she has experienced.

Here, Ms. Lewis has alleged no complaint or other protected activity regarding disability discrimination. While she may proceed with her disability discrimination claim because she may be able to establish that the defendants discriminated against her when they terminated her, she has not alleged that she complained about disability discrimination to the defendants. The Complaint states that she made legally protected complaints about misconduct but does not specify what those complaints were. Though the Complaint states that she reported Mr. Perez's abuse to Ms. Belmar, it makes no specific mention of Ms.

Lewis reporting any disability discrimination. Accordingly, the Court dismisses Counts II, VI, and XII.[3]

### C. Sex Discrimination Claims—Counts III, VII, and XIII

Ms. Lewis also claims that she was discriminated against on the basis of sex in violation of Title VII, the NYSHRL, and the NYCHRL. Because sex discrimination claims under the NYSHRL and the NYCHRL operate similarly to Title VII sex discrimination claims, the Court proceeds by examining whether Ms. Lewis has met her burden under Title VII. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

To make out a prima facie case of discrimination under Title VII, an employee must demonstrate that: "(1) [he or she] is a member of a protected class; (2) [he or she] was qualified for her position and satisfactorily performed [his or her] duties; (3) [he or she] suffered an adverse employment action; and (4) the circumstances surrounding that action giv[e] rise to an inference of

---

[3] For two reasons, the Court denies Ms. Lewis's request that she be granted leave to amend if the Court concludes that she has failed to state a claim upon which relief can be granted. First, at the premotion conference, her attorney represented that they would move ahead with the current Complaint, despite being given opportunity then to amend it. Second, her briefing regarding this motion does not specify what additional factual allegations she would make to cure any deficiencies. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint.").

discrimination." *Buckley v. New York*, 959 F. Supp. 2d 282, 296 (E.D.N.Y. 2013). The fourth prong of that test is satisfied at the motion to dismiss phase if the employee has alleged facts that plausibly suggest a defendant's discriminatory state of mind. *Id.* Sex discrimination under Title VII also encompasses discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k).

An employee can also establish sex discrimination by showing that he or she experienced sexual harassment that amounted to a hostile work environment. *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004). To prevail on such a claim, an employee must establish: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."

Here, Ms. Lewis has pleaded enough facts to establish a prima facie case of sex discrimination under Title VII. First, by pleading that she was fired while Mr. Perez was not, Ms. Lewis alleged facts that could give rise to an inference of discrimination because she is a woman. While the defendants retained her male abuser, they terminated the female target of that abuse. Further, though she did not allege that the defendants besides Mr. Perez knew that she was pregnant, the fact that Mr. Perez knew can give rise to the inference that others may have known as

well. Those facts can, at this stage, support a claim for discrimination on the basis of her pregnancy.

In addition, Ms. Lewis has alleged facts that allow her to move forward on her claim for a hostile work environment. She alleges that she was physically abused and harassed by Mr. Perez at their place of work, which interfered with her ability to work there. She has also pleaded that Ms. Belmar, an HR manager, knew about this abuse and did nothing to stop it. Those facts permit the Court to impute Mr. Perez's behavior to the employer. Ms. Lewis, therefore, has stated a claim for a hostile work environment. Accordingly, the Court denies the defendants' motion to dismiss with regard to Counts III, VII, and XIII.

### D. Sex Retaliation Claims—Counts IV, VIII, XIV, and XVI

Ms. Lewis further claims that the defendants retaliated against her for engaging in protected activity under Title VII, the NYSHRL, and the NYCHRL. As above, the Court analyzes this issue under the Title VII standard. *See Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (stating that the elements of the three laws are the same, except that the NYCHRL standard regarding proving adverse employment action is more liberal).

To make a prima facie case for retaliation under Title VII, an employee must show: (1) that he or she participated in a protected activity; (2) that the employer knew of that activity; (3) that the employer took an adverse action against the

13

employee; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205-06 (2d Cir. 2006).

Here, Ms. Lewis has pleaded adequate facts to defeat a motion to dismiss. She has pleaded that she informed Ms. Belmar about the abuse and harassment she experienced, which could be construed as a protected activity under Title VII. Just four days later, Ms. Belmar and Ms. Guligi informed Ms. Lewis that she was being terminated, which can give rise to an inference of causation. Accordingly, the Court concludes that Ms. Lewis has alleged a prima facie case of retaliation under Title VII, the NYSHRL, and the NYCHRL. The Court, therefore, denies the defendants' motion to dismiss Counts IV, VIII, XIV, and XVI.

### E. Proper Defendants Under the NYSHRL and the NYCHRL

The defendants argue that the aforementioned discrimination and retaliation claims under the NYSHRL and the NYCHRL are improperly brought against the individual defendants. For the reasons that follow, the Court disagrees.

In employment discrimination cases brought under the NYSHRL and the NYCHRL, supervisors and coworkers can be proper defendants if they have aided or abetted the employer's discriminatory acts. N.Y. Exec. Law § 296(6); *Feingold v. New York,* 366 F.3d 138, 157–58 (2d Cir. 2004). Those coworkers have aided and abetted the employer if they "actually participate[d] in the conduct giving rise

to a discrimination claim." *Feingold,* 366 F.3d at157 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995)).

Here, the Complaint alleges facts suggesting that the individual defendants aided and abetted the discrimination and retaliation that Ms. Lewis claims she experienced. She pleaded that Mr. Perez abused and harassed her, giving rise to a hostile work environment. Further, given the circumstances surrounding Ms. Lewis's termination, the Court can reasonably infer that Mr. Perez was involved in her allegedly discriminatory and retaliatory termination. Ms. Lewis also alleged that Ms. Belmar and Ms. Guligi informed Ms. Lewis that she was being terminated, thereby participating in the allegedly discriminatory and retaliatory termination. Lastly, Ms. Lewis alleged that she was told by a coworker that Mr. Edwards made sure that Ms. Lewis was fired while Mr. Perez was not. She thus pleaded that Mr. Edwards also participated in the termination. Accordingly, Ms. Lewis may proceed against all individual defendants with her claims under the NYSHRL and the NYCHRL.

**IT IS SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

March 29, 2019
Brooklyn, New York